IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GENE IRVING GARLAND, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:03-CV-2658-D |
| VS. | § | |
| | § | |
| UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF TEXAS, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER OF RE-REFERENCE

Plaintiff Gene Irving Garland, Jr. ("Garland") sues the United States Attorney for the Northern District of Texas ("U.S. Attorney"), the Securities and Exchange Commission ("SEC"), and four individual defendants: Marshall Gandy ("Gandy"), an SEC employee; Leonard A. Senerote ("Senerote") and Monica Walters ("Walters"), both former Assistant United States Attorneys[1]; and Sheila Powell ("Powell"), a certified public accountant employed by the United States Attorney's Office for the Northern District of Texas ("USAO"). After making an independent review of the pleadings, files, and records in this case, and the February 16, 2005 report and recommendation of the magistrate judge, the court adopts the findings and conclusions in part. The court dismisses without prejudice the actions against the U.S. Attorney and the SEC, dismisses one of Garland's claims, and it re-refers the balance of the case to the magistrate judge for further proceedings.[2]

---

[1]Walters was a Special Assistant United States Attorney, but this distinction is immaterial for purposes of the present decision.

[2]This decision is captioned as a memorandum opinion because, under § 205(a)(5) of the E-Government Act of 2002 and the definition of "written opinion" adopted by the Judicial Conference of the United States, it "sets forth a reasoned explanation for [the] court's decision." Because the

I

It is not clear from Garland's amended complaint ("complaint") whether he is attempting to sue the U.S. Attorney or the USAO. Assuming *arguendo* that Garland is suing the USAO, defendants argue that the suit should be dismissed as to the USAO and the SEC under either the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq*., or the doctrine of sovereign immunity. Specifically, they contend that, to the extent that Garland's claims allege the tort of "interference with contract rights," his suit is barred as to these defendants by 28 U.S.C. § 2679(a). Alternatively, they argue that, to the extent Garland's claims allege a constitutional tort, the United States has not waived sovereign immunity.

Although Garland alleges that defendants interfered with the contracts between his company and its clients, it does not appear that he is attempting to assert a state-law claim of tortious interference with contract. Rather, it appears that he is attempting to assert a claim under the Constitution that defendants violated his constitutional right to contract, protected by the Fifth Amendment Due Process Clause. Garland specifically contends that, "[b]y interfering in the private contracts, the SEC and the United States Attorney and the individual defendants have violated the Constitutionally protected rights of both Gene Garland, Jr. and the contract owners." Am. Compl. at 5. He also avers that this court's jurisdiction arises under 28 U.S.C. § 1331 (federal question) "because these Civil Actions arise under the Constitutional laws of the United States." *Id.* at 2-3. Accordingly, the court declines to conclude that Garland is asserting a claim under state law and will restrict its analysis to his constitutional causes of action.

---

court is addressing the magistrate judge's report and recommendation, however, it is not setting out in detail the background facts and procedural history of this case, as it would normally do when filing a memorandum opinion.

Garland not only appears to allege that defendants violated his right to contract, he also contends that he was deprived of the due process of law. He is unable to assert these claims against the USAO and the SEC. "A party may not bring suit against the United States absent an explicit waiver of sovereign immunity by Congress." *Drake v. Panama Canal Comm'n*, 907 F.2d 532, 534 (5th Cir. 1990). United States agencies and officers are also protected by sovereign immunity. *Id*. In his response to defendants' motion, Garland essentially argues that the USAO and the SEC should be held vicariously liable for actions of the individual defendants. He incorporates the same argument in his objections to the magistrate judge's report and recommendation. This argument is insufficient to show that Congress has explicitly waived the government's sovereign immunity to such an extent that Garland can pursue his claims against the USAO and the SEC. He may not proceed against these defendants on these claims by way of an action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), because *Bivens* claims are not available against federal agencies, *see FDIC v. Meyer*, 510 U.S. 471, 486 (1994). Accordingly, the court dismisses without prejudice for want of jurisdiction Garland's claims against the USAO and SEC. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980).[3]

II

The court now considers the viability of Garland's constitutional claims insofar as asserted against the U.S. Attorney and the other individual defendants in their individual capacities.

---

[3]To the extent Garland is attempting to sue the U.S. Attorney or any individual defendant in the person's official capacity, his suit is also barred because *Bivens* "provides a cause of action only against government officers in their individual capacities." *Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d 282, 286 (5th Cir. 1999).

A

Garland alleges that defendants interfered with private contracts between him and his clients and thereby violated his right to contract protected, *inter alia*, by the Fifth Amendment Due Process Clause. His claim appears to be predicated on allegations that some or all the defendants (1) contacted his clients and informed them that his company had stolen their money; (2) seized computers and records from his company; (3) instituted an SEC civil action against his company; and (4) prosecuted him for securities and mail fraud and money laundering. Defendants argue, *inter alia*, that Garland's complaint fails to state a claim upon which relief may be granted. The court agrees.

Defendants argue that Garland's complaint, *inter alia*, "take[s] an alleged 'tortious interference with contract rights' and attempt[s] to contort it into a constitutional violation[.]" Ds. Br. at 19. The Seventh Circuit reached the same conclusion in a case where a plaintiff attempted to assert a violation of her due process rights on the basis that government officials "wrongfully interfered with a contract between [her] and a client." *Khan v. Gallitano*, 180 F.3d 829, 830 (7th Cir. 1999). In *Kahn* the plaintiff (an attorney) had entered into a contingency fee arrangement with a client, and she initiated a civil rights action on the client's behalf against, among others, the president of a city board of trustees. *Id*. at 830-31. The client agreed that she would be involved in any settlement negotiations and that he would not dismiss the case without consulting her. *Id*. at 831. In reaching a settlement of a condemnation proceeding with the city, the client agreed to dismiss his civil rights suit. *Id*. The attorney was not informed of the negotiations leading to this settlement, nor was she involved in them. *Id*. She sued, *inter alia*, several current or former city officials, alleging that the client had "agreed to dismiss the civil rights action only because the

defendants had wrongfully coerced him." *Id*. at 830-32.

In considering the attorney-plaintiff's substantive due process claim, *Kahn* held that the interest on which she relied—"the 'right to contract" and the right to perform a specific contract"—was "too general to guide [its] analysis of the specific conduct about which [she] complain[ed]," recognizing that she did "not allege that the defendants deprived her of a general right to enter into contracts." *Id*. at 833-34. Instead, the court defined the right at issue as "the right to be free from state officials tortiously interfering with one's existing contractual relationships." *Id*. The court explained that the attorney-plaintiff "must show not merely that the defendants injured her in some legal sense but that they deprived her of a liberty deeply rooted in our history and tradition." *Id*. In recognizing that her burden was a great one, the panel noted the general reluctance of courts to "recognize new substantive-due-process rights," especially where the rights "are, as in this case, nothing more than a state-law tort made into a constitutional tort[.]" *Id*. (citing, *inter alia*, *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 202 (1989) ("The Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.")). In concluding that attorney-plaintiff did not meet her burden, the court concluded that she had "failed to show why the right to be free from tortious interference by state actors is a fundamental right deeply rooted in our history and tradition or implicit in the concept of ordered liberty," and that she had "not shown why having a state-law remedy for whatever injury the defendants caused her is inadequate under the federal constitution."[4] *Id*. at 835.

[4]In analyzing the case under an alternative substantive due process inquiry that required the court to consider whether the "defendants' conduct shocks [the] conscience," the court concluded that the attorney-plaintiff's claim failed under this test as well, holding that "[t]he defendants' tortious acts, which subject them to possible liability under state law, [were] not so extreme as to shock the conscience." *Khan*, 180 F.3d at 836.

Accordingly, the court declined to "create a redundant federal right that simply mirrors the available state-law tort." *Id*. Like the plaintiff in *Kahn*, Garland has failed to show that the right he asserts deserves constitutional protection, and this court accordingly declines to hold that Garland has stated a federal cause of action based on a violation of his "right to contract."[5] The court therefore dismisses this claim with prejudice.

---

[5]Even if the court were to consider Garland's allegations under the more broadly-defined "right to contract," his claim would still fail. Such a right has never been absolute. As early as 1898 the Supreme Court recognized that the "right of contract . . . is itself subject to certain limitations which the State may lawfully impose in the exercise of its police powers." *Holden v. Hardy*, 169 U.S. 366, 391 (1898); *see also Nebbia v. New York*, 291 U.S. 502, 527-28 (1934) ("The Constitution does not guarantee the unrestricted privilege to engage in a business or to conduct it as one pleases. Certain kinds of business may be prohibited; and the right to conduct a business, or to pursue a calling, may be conditioned." (footnote omitted)). One of the cases on which Garland relies in his complaint, *Gray v. American Express Co.*, 743 F.2d 10 (D.C. Cir. 1984), recognizes that the right to contract can be limited. *See id.* at 16-17 ("Absent a statutory prohibition or some public policy impediment the very essence of freedom of contract is the right of the parties to strike good bargains and bad bargains." (citation omitted)). A magistrate judge in another court in this circuit recently relied on a prisoner's acknowledgment of *Gray*'s language in recommending the rejection of his motion to vacate under 28 U.S.C. § 2255, where the prisoner argued that "government prosecution and misconduct deprived him of his right to contract." *See Davis v. United States*, 2003 U.S. Dist. LEXIS 18357, at *2, *37, *64 (W.D. Tex. 2003) (noting that prisoner acknowledged that "the 'right of the parties to strike good bargains and bad bargains' is limited by 'statutory prohibition.'"). The language quoted from *Love v. Pepersack*, 47 F.3d 120 (4th Cir. 1995), in the magistrate judge's recommendation in the present case also illustrates the limited nature of this right. In *Love* the plaintiff challenged the actions of Maryland state troopers that led to the denial of her application for a handgun. *Id*. at 122. She argued, *inter alia*, that "the disapproval of her application violated her 'right to contract' with the gun dealer." *Id*. at 123 n.4. The court observed that "[t]here is no positive federal 'right to contract' at all times on all subjects, though individuals are generally free to contract in a manner and with objectives that do not violate local law[.]" *Id*.

Here, Garland does not have a substantive constitutional right to be free from the actions that give rise to his claim. These actions appear to have been taken as part of the successful prosecution of a civil enforcement and criminal action against him for wrongful actions that he undertook. Moreover, Garland's allegation that his clients were contacted directly and told that he was stealing their money likely arise from an understandable attempt by the government to warn people who were apparent victims of Garland's fraud. If the court holds that Garland's allegations are sufficient to state a claim, it would hamper government attempts to enforce the law and protect persons from harmful activity anytime doing so could negatively affect a contractual relationship between a defendant and another party.

B

The court next addresses Garland's claim that he was deprived of his right to due process. This cause of action rests on the alleged presentation of false financial reports, coercion of witnesses to testify falsely at his trial, presentation of testimony and evidence at his trial that was only intended to inflame the jury, and an allegation that Senerote committed perjury in a hearing before Judge Barefoot Sanders ("Judge Sanders"), in order to persuade him to accept improperly-deposed testimony.[6]

With the exception of Garland's allegation that Senerote committed perjury, it is not clear from his complaint which defendant or defendants took these actions. Garland makes the global assertion that "[t]he United States Attorney's Office aided by the SEC, FBI, U.S. Postal Inspector's Office engaged in many improper and illegal acts that resulted in depriving [him] of his due process of law[.]" Am. Compl. at 6. Despite the vagueness of the allegation, the court will consider the viability of Garland's claim as to each individual allegation listed above.

1

The court first considers whether Garland's allegation that Senerote committed perjury in a hearing before Judge Sanders may serve as a viable basis for his claim. Senerote and Walters prosecuted Garland in a criminal case. Prosecutors are entitled to absolute immunity "with respect to activities that are 'intimately associated with the judicial phase of the criminal process.'" *Cousin v. Small*, 325 F.3d 627, 631-32 (5th Cir.) (per curiam) (quoting *Imbler v. Pachtman*, 424 U.S. 409,

[6]In his objections to the magistrate judge's recommendation, Garland appears to allege that the defendants entered into a conspiracy. He asserts that "the [d]efendants conspired to falsify financial reports, coerced witnesses to testify falsely, made false and misleading statements to [his] clients and that . . . Senerote committed perjury." P. Objs. at 3. The magistrate judge may consider on re-reference whether such a clam should be allowed in an amended complaint and whether, if pleaded, Garland has stated a claim on which relief may be granted.

430 (1976)), *cert. denied sub nom. Cousin v. Berry*, 540 U.S. 826 (2003). "Conduct falling within this category is not limited 'only to the act of initiation itself and to conduct occurring in the courtroom,' but instead includes all actions 'which occur in the course of [the prosecutor's] role as an advocate for the State[.]'" *Id.* at 632 (quoting *Buckley v. Fitzsimmons,* 509 U.S. 259, 272-73 (1993)). Although prosecutors are entitled to absolute immunity for actions they take in their role as advocates, they are not entitled to such immunity with respect to actions that are investigatory in nature. *See Buckley*, 509 U.S. at 272-73 ("A prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity."); *Cousin*, 325 F.3d at 633-35.

The hearing before Judge Sanders was unquestionably part of the judicial phase of Garland's prosecution, during which Senerote was acting as a government advocate. He is thus entitled to absolute immunity as to this claim. Because this particular allegation only implicates Senerote, the court need not determine whether it may serve as the basis for Garland's claim as to the other defendants. Accordingly, this allegation may not serve as the basis of Garland's due process claim.

2

The court next considers whether Garland's claim may stand on the allegation that testimony and evidence was presented at his trial[7] that was only intended to inflame the jury. Although Garland's complaint does not state that this action was taken by Senerote and/or Walters, assuming *arguendo* that it was, they are entitled to absolute immunity. A prosecutor's presentation of

[7]Although Garland was involved in both an SEC civil action and a criminal prosecution conducted by the USAO, the allegations regarding his trial must relate to his criminal trial, because there was no trial in the civil proceeding.

testimony and evidence during a criminal trial falls in the category of advocatory activity for which a prosecutor is entitled to absolute immunity.

If Powell is implicated by this allegation, she is entitled to absolute immunity to the extent she presented the alleged testimony and evidence in her role as a witness in Garland's trial. "[W]itnesses are entitled to absolute immunity against § 1983 suits based on their testimony in a criminal trial[.]" *Mowbray v. Cameron County*, 274 F.3d 269, 277 (5th Cir. 2001) (citing *Briscoe v. LaHue*, 460 U.S. 325, 329-31, (1983)); *see also Graves v. Hampton*, 1 F.3d 315, 318 (5th Cir. 1993) ("A witness is entitled to absolute immunity from section 1983 damage claims, even if it is alleged that the witness committed perjury."). This rule applies equally to *Bivens* actions. *See Wafer v. Person,* 70 Fed. Appx. 194, 195 (5th Cir. 2003) (per curiam) (unpublished opinion) ("Witnesses have absolute immunity from a *Bivens* action based on their testimony."); *McQueen v. United States*, 264 F. Supp. 2d 502, 512 (S.D. Tex. 2003) (holding witnesses "absolutely immune from a *Bivens* suit based on their alleged false testimony[.]"), *aff'd,* 100 Fed. Appx. 964 (5th Cir. 2004) (unpublished opinion). Accordingly, Powell is absolutely immune from suit to the extent she presented the alleged testimony and evidence in her role as a witness in Garland's trial.

Moreover, this allegation cannot serve as the basis for Garland's due process claim, because it is precluded under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* states that

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]

*Id.* at 486-87 (footnote omitted); *see also Sappington v. Bartee*, 195 F.3d 234, 235 (5th Cir. 1999)

(per curiam). *Heck* applies equally to *Bivens* actions. *See Stephenson v. Reno*, 28 F.3d 26, 27-28 (5th Cir. 1994). There is no indication that Garland's conviction or sentence has been reversed, expunged, declared invalid or otherwise called into question. Thus the court must determine "whether a judgment in [his favor] would necessarily imply the invalidity of his conviction or sentence[.]" *Heck*, 512 U.S. at 487. The court concludes that a finding that any defendant presented testimony and evidence at Garland's criminal trial that was solely intended to inflame the jury would necessarily imply the invalidity of his conviction. Accordingly, to the extent that Garland's claim is based on this allegation, even if it implicates the U.S. Attorney or Gandy, the claim is "dismissed with prejudice to [its] being asserted again until the *Heck* conditions are met." *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (per curiam).[8]

3

The court next considers whether Garland's allegation that witnesses were coerced to testify falsely at his trial may serve as a valid basis for his claim against the individual defendants. Garland again fails to identify which defendant or defendants are actually responsible for taking these actions. Assuming *arguendo* that Senerote and Walters were involved, the court is unable to determine at this time whether they are entitled to absolute immunity.

In *Cousin* the Fifth Circuit considered whether a prosecutor was entitled to absolute immunity from a claim that he coerced a witness to give false trial testimony. *See Cousin*, 325 F.3d

---

[8]In reaching this conclusion and the other rulings based on *Heck*, the court recognizes that *Heck* is inapplicable where "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff[.]" *Heck*, 512 U.S. at 487; *see id.* at 487 n.7. Considering the murky nature of Garland's complaint and of the claims he appears to assert, the court has not concluded that *Heck* applies to all his claims that appear to relate to his criminal conviction, and it leaves this question to the magistrate judge to consider, if necessary, on re-reference.

at 632-35. In determining whether the prosecutor was entitled to absolute immunity, the panel focused on whether he was acting in an investigatory or advocatory capacity at the time he allegedly coerced the witness. *See id.* at 632-35. The plaintiff cited *Buckley* to argue that the prosecutor's actions were investigatory. *Id*. at 633. The panel noted that, in *Buckley*, "the prosecutors sought to develop evidence, in the absence of probable cause, to arrest the suspect or initiate judicial proceedings." *Id*. It observed that "[a]lthough *Buckley* did not explicitly hold that all witness interviews conducted after indictment are advocatory in nature, the Court's reasoning strongly indicates that many, perhaps most, such interviews are likely to be advocatory rather than investigative." *Id*. The court also noted that *Buckley* "focused on the lack of probable cause to arrest the suspect as an indication of the investigative nature of the prosecutors' conduct[.]" *Id*. From *Buckley* the panel drew the "necessary implication . . . that after probable cause has been established, it is more likely that the prosecutor acts as an advocate," and it concluded that "the existence of probable cause with respect to a particular suspect is a significant factor to be used in evaluating the advocatory nature of prosecutorial conduct." *Id*. The court panel stated that "the question of absolute immunity turns on whether [the plaintiff] had been identified as a suspect at the time [the witness] was interviewed and whether the interview related to testimony to be presented at trial." *Id*. It concluded that the record demonstrated that the prosecutor "was acting as an advocate rather than as an investigator" and that the intent of the prosecutor's interview with the witness was to obtain evidence he could use in presenting a case against a suspect that had already been identified, and not "to identify a suspect or establish probable cause." *Id*. at 635. On this basis, the panel held that the prosecutor was entitled to absolute immunity from plaintiff's claim. *Id*.

It is not clear from Garland's complaint in what context the witnesses were allegedly coerced

to testify falsely at his trial. Thus the court is unable to determine whether the actions were taken in an investigatory or an advocatory capacity. As *Cousin* shows, this is relevant to whether Senerote and Walters are entitled to absolute immunity as to this allegation.

Even if Senerote and Walters are not entitled to absolute immunity, however, this allegation fails to serve as a valid basis for Garland's due process claim because it is barred by *Heck*. *See Germosen v. Cox*, 1999 WL 1021559, at *9 (S.D.N.Y. Nov. 9, 1999) (applying *Heck* to allegations that "federal defendants elicited perjured testimony and fabricated evidence against [plaintiff] at his criminal trial" where his conviction had not been invalidated). Accordingly, the court need not also determine whether this allegation implicates Powell, Gandy, or the U.S. Attorney. As stated above, to the extent Garland's claim is based on the allegations that witnesses were coerced to testify falsely at his trial, it must be dismissed with prejudice until the *Heck* conditions have been satisfied. *See Johnson*, 101 F.3d at 424.

4

As to the presentation of false financial reports, not only is it unclear which defendant or defendants are responsible for taking these actions, the context in which the reports were presented is also unclear from the complaint. This lack of specificity prevents the court from determining whether Senerote and Walters are entitled to absolute immunity as to this allegation. If the reports were presented at Garland's criminal trial, Senerote and Walters would be entitled to absolute immunity because, as explained above, the presentation of evidence at trial is advocatory. If the false financial reports were presented in some other context, however, Senerote and Walters may not be entitled to prosecutorial immunity. Moreover, if Powell presented the alleged reports as part of her testimony in Garland's criminal trial, she would be entitled to absolute immunity. *See supra*

§ II(B)(2). If she presented them in another context, however, she may not be entitled to witness immunity.

Gandy's role, if any, in the presentation of the false financial reports is also unclear. If he presented these reports as part of the civil proceedings against Garland, he would likely be entitled to absolute immunity, because "'[a]n agency attorney who arranges for the presentation of evidence on the record in the course of an adjudication is absolutely immune from suits based on the introduction of such evidence.'" *Saunders v. Bush*, 15 F.3d 64, 66-67 (5th Cir. 1994) (quoting *Butz v. Economou*, 438 U.S. 478, 516 (1978)) (holding Department of Labor attorney "absolutely immune from suit" where the attorney litigated complaint against plaintiff in hearing before administrative law judge). Because Gandy's role in presenting these reports, and the context in which he presented them, are unclear, the court is unable to hold at the motion to dismiss stage that he is entitled to immunity. Additionally, the application of *Heck* to this particular allegation depends on whether the alleged financial reports were presented at his trial. Because the court cannot determine the application of *Heck* or the availability of immunity, it re-refers the matter to the magistrate judge for further proceedings.

* * *

The court dismisses without prejudice Garland's action against the USAO and the SEC by Fed. R. Civ. P. 54(b) final judgment filed today. It dismisses with prejudice Garland's Fifth Amendment Due Process Clause claim based on an alleged violation of his "right to contract." The court dismisses in part Garland's other claims based on prosecutorial immunity and/or under *Heck*,

and it re-refers the balance of the case to the magistrate judge for further proceedings.[9]

**SO ORDERED**.

April 20, 2005.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

[9]Although defendants also argue, *inter alia*, that process or service of process was insufficient as to Senerote, Walters, Gandy, and Powell, in view of indications in the record that some or all these defendants have been served, the court declines to address this argument. Moreover, defendants raise in their brief additional arguments that the court has not addressed. They argue, *inter alia*, that Garland's claims against the individual defendants are barred by the statute of limitations, that his complaint should be dismissed to the extent he sues the U.S. Attorney in her individual capacity because she is not subject to liability under *respondeat superior*, and that the individual defendants are entitled to qualified immunity from suit. Nothing in the court's opinion today precludes the magistrate judge on re-referral from disposing of Garland's claims on one or more of these grounds.